**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-6701

CASEY RAFAEL TYLER,

Petitioner - Appellant,

v.

ERIK A. HOOKS,

Respondent - Appellee.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. William L. Osteen, Jr., District Judge. (1:17-cv-00833-WO-JLW)

Argued: October 31, 2019                          Decided: December 17, 2019

Before NIEMEYER and AGEE, Circuit Judges, and Thomas S. KLEEH, United States District Judge for the Northern District of West Virginia, sitting by designation.

Affirmed in part, vacated in part, and remanded with instructions by published opinion. Judge Agee wrote the opinion, in which Judge Niemeyer and Judge Kleeh joined.

**ARGUED:** Damon Clarke Andrews, KIRKLAND & ELLIS LLP, Washington, D.C., for Appellant. Clarence Joe DelForge, III, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Robert L. Littlehale, Victor Van Dyke, KIRKLAND & ELLIS LLP, Washington, D.C., for Appellant. Joshua H. Stein, Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee.

AGEE, Circuit Judge:

Casey Tyler, a North Carolina state prisoner, appeals from the district court's grant of summary judgment denying his 28 U.S.C. § 2254 petition for habeas corpus. The petition alleged several due process violations stemming from a prison disciplinary proceeding that resulted in the revocation of twenty days of Tyler's "good-time" credits.[1]

In the district court, Tyler argued he was entitled to habeas relief because: (1) the prison disciplinary hearing officer (the "DHO") did not consider video evidence of the underlying events during the proceeding; and (2) there was insufficient evidence to convict him of the alleged disciplinary offense. The magistrate judge disagreed and entered a Report and Recommendation ("R&R") that the district court grant the State's motion for summary judgment and deny Tyler's petition. The district court adopted the R&R in full, granted the State's motion, and denied Tyler's petition. He appealed and this Court granted a limited Certificate of Appealability ("COA").

For the reasons stated below, we affirm the denial of Tyler's claim as it pertains to the DHO's failure to view the video evidence but vacate the district court's determination that there was sufficient evidence to support the disciplinary conviction. We remand to the district court with instructions to grant habeas relief as to the good-time credits.

---

[1] In North Carolina, inmates may earn good-time credits which could reduce the period of incarceration they have been sentenced to serve. These credits are a creature of state law and provide an "interest [that] has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle [inmates] to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure" that the right "is not arbitrarily abrogated." *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).

2

I.

Tyler is an inmate at Scotland Correctional Institution ("Scotland") in North Carolina where he is serving a 347-month sentence for various offenses, including second-degree murder. His § 2254 petition challenged a May 2017 prison disciplinary conviction for a North Carolina Class A disciplinary offense (A-18 of the North Carolina Inmate Disciplinary Procedures). The A-18 provision prohibits inmates from "[k]nowingly mak[ing] to any person a false oral or written allegation about a staff member that, if true, could expose the staff member to criminal liability[.]" State of N.C. Dep't of Pub. Safety, Prisons Policy and Procedure, Inmate Disciplinary Procedures, ch. B, § .0202(a)(A18) (2016) (hereinafter "Disciplinary Procedures").

Tyler's disciplinary conviction stems from a written prison administrative complaint he filed in March 2017. According to his § 2254 petition, that complaint alleged he was sexually assaulted by prison guard Cameron Gaddy. Tyler claimed he was groped during a pat-down after leaving the prison chapel. Scotland officials investigated the allegations and determined them to be "unfounded." J.A. 4. Following that determination, Officer Queen Gerald opened a separate investigation to assess whether Tyler's complaint constituted a disciplinary offense.

As part of this investigation, Officers Gaddy and Gerald, as well as Tyler, submitted written statements to Kim Smith, the Investigating Officer assigned to the disciplinary proceeding. Officer Gaddy's statement provided only that he "ha[d] no knowledge" of Tyler's "displainary [sic] issue." J.A. 3. Officer Gerald's statement consisted of the following: "On 3/24/17 at approximately 1418 hours, an allegation was made against staff

3

by inmate Casey Tyler # 1124017. A [*sic*] investigation was conducted and the allegation was unfounded." J.A. 4. Meanwhile, Tyler's statement amounted to a general denial of the A-18 offense allegation and a "demand to be tried in [a] Real court if anyone really believes I would—or did—go out of my way to falsely report on any staff person." J.A. 2.

After reviewing the statements and video footage from the day of the alleged assault, Officer Smith issued her Investigating Officer's Report, which noted that the video "neither took away nor added to the reporting partys [*sic*] statement." J.A. 5. Officer Smith concluded: "Based on the information reported it is recommended that inmate Tyler be charged with a [*sic*] A-18 offense." J.A. 5.

The following week, DHO Pamela Locklear conducted a disciplinary hearing on the A-18 charge. Tyler pleaded "not guilty," J.A. 6, and requested that the video from the day of the alleged assault be made part of the record. Although she noted that the Investigating Officer "reviewed the video and stated that it did not add to nor take away from the reporting party's statement," J.A. 6, the record does not reflect that DHO Locklear reviewed the video herself. In summarizing the evidence presented at the hearing and finding Tyler "guilty" of the A-18 offense, DHO Locklear concluded: "After reviewing this package [including the above-described statements and Investigating Officer's Report], no evidence can be found to support the inmate[']s allegations. Based on the reporting party's statement and the investigating officer's report, inmate is found guilty of the A-18 offense." J.A. 6. Tyler's punishment included the loss of twenty days of good-time credit earned toward his 347-month sentence. The conviction was upheld on

4

administrative appeal.[2]

Tyler filed a habeas corpus petition in the Superior Court of Scotland County, North Carolina, which was summarily denied. The North Carolina Court of Appeals denied Tyler's petition for a writ of certiorari without comment. And the North Carolina Supreme Court also denied Tyler's motion for discretionary review without comment. None of these decisions contained an explanation for the denial.

Tyler then sought federal habeas relief under 28 U.S.C. § 2254, where he presented two claims. First, Tyler argued that his due process rights were violated because DHO Locklear "claimed [the] investigating officer reviewed video [and] judged its contents. [The] DHO based verdict on investigator's [and] 'reporting party's' statements only, but did not 'detail' evidence relied on for verdict." J.A. 53. He elaborated that "[s]omeone other than the judge at the hearing was allowed to judge the value of 'my' requested evidence, even the video 'of' the cause of action here, [and] the DHO deferred to this, my adversary's judgment." J.A. 44. For his second claim, Tyler argued that Officer Gaddy "neither admitted to nor denied my . . . allegation: he feigned ignorance to my 'disciplinary issue,' according to [the] DHO. His failure to accuse me of falsely accusing him should be construed as evidence in my favor—even if only as a lack of evidence against me." J.A. 44. And with respect to the *mens rea* necessary for an A-18 offense, Tyler asserted that "even though [the assault allegation] was deemed unfounded—sufficing without more to

---

[2] In his administrative appeal, Tyler argued that his "right[s] . . . [were] violated" because he "requested in writing pertinent video evidence" but the "DHO refused to view video evidence herself," instead "bas[ing] her own judgment on [the] Investigating [Officer's] word that video evidence was irrelevant." J.A. 10.

convict me of knowingly lying on [Officer] Gaddy—nothing was presented suggesting I had the requisite criminal intent for the infraction." J.A. 44. The State answered Tyler's petition and moved for summary judgment, which Tyler opposed.

The magistrate judge entered an R&R that the district court grant the State's motion and deny Tyler's petition. With respect to Tyler's claim that the DHO should have personally reviewed video footage from the day of the alleged assault, the magistrate judge determined that Tyler "fail[ed] to meaningfully explain how [the video was] necessarily material or how he was prejudiced by [its] absence." J.A. 95. Further, the magistrate judge found that Tyler's "speculation that the DHO would have reached a different conclusion after personally reviewing the video does not create a material issue of fact, nor does it establish that he was denied due process." J.A. 95.

For Tyler's sufficiency-of-the-evidence claim, the magistrate judge first recognized that due process requires "some evidence" to support a prison adjudicator's decision to revoke good-time credits. J.A. 93. The magistrate judge then found that (1) Officer Gaddy's "denial of the sexual misconduct" and (2) Tyler's "failure to produce any evidence to support his allegation" satisfied this standard. J.A. 94; *see also* J.A. 96 ("[T]he [DHO] pointed out that Officer Gaddy denied [Tyler's] allegation of sexual assault and also found further that there was nothing in the record that supported [Tyler's] allegation of sexual assault. This is 'some evidence' of [Tyler's] guilt[.]"). Tyler filed a short response objecting to the magistrate judge's recommendation "in full." J.A. 99.

The district court held that Tyler had filed timely, albeit general, objections to the R&R. Although it was not required to do so, the district court conducted a *de novo* review

6

of the recommendation. The court then summarily adopted the R&R, granted the State's

motion for summary judgment, denied Tyler's petition, and dismissed the action.

Tyler timely appealed, and this Court granted a COA on the following issues only:

Whether the district court erred in granting summary judgment on Tyler's claims that his due process rights were violated because:

(1) the [DHO] did not introduce or personally review the requested surveillance video; and

(2) the record contained insufficient evidence to support Tyler's disciplinary conviction.[3]

*Tyler v. Hooks*, No. 18-6701 (4th Cir. Dec. 12, 2018) (order granting a COA). The Court

has jurisdiction under 28 U.S.C. § 2253(c).

II.

A.

"The decision of a district court on a matter of habeas corpus relief is reviewed *de*

*novo* and under the standards set forth in 28 U.S.C. § 2254." *Appleby v. Warden, N. Reg'l*

*Jail & Corr. Facility*, 595 F.3d 532, 535 (4th Cir. 2010). Under the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA"), if the issue on appeal was adjudicated

on its merits in state court, federal courts can award habeas relief only if the adjudication

"resulted in a decision that was contrary to, or involved an unreasonable application of,

---

[3] Tyler asserted in his briefs and during oral argument that DHO Locklear further erred by not stating her reasons for declining to provide the video for his review. Because this argument is not within the scope of the issues granted by the COA, we do not consider it here. *See* 28 U.S.C. § 2253(c)(3); 4th Cir. R. 22(a) (discussing COA procedures).

clearly established Federal law, as determined by the Supreme Court of the United States[.]" *Cummings v. Polk*, 475 F.3d 230, 237 (4th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)). This is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).[4] Thus, the petitioner carries a formidable burden to prove that his case falls under one of the two categories of circumstances meriting federal habeas relief under § 2254(d)(1). *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

As an initial matter, "'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). Under the first § 2254(d)(1) category, a decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). In other words, the petitioner must show that the state court's decision was "diametrically different, opposite in character or nature, or mutually opposed" to federal law as determined by the Supreme Court. *Vick v. Williams*, 233 F.3d 213, 216 (4th Cir. 2000).

Under the second category, a state court's decision is an "unreasonable application" of federal law "if the state court correctly identifies the governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the

---

[4] We have omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

particular case." *Id.* Limiting the scope of this analysis even further, the Supreme Court has rejected the notion that a state court could unreasonably apply Supreme Court precedent by "refus[ing] to extend a legal principle to a new [legal] context where it should apply." *White v. Woodall*, 572 U.S. 415, 425 (2014); *accord Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) ("[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court.").

The Supreme Court has made clear that under this highly deferential standard, a federal court hearing a § 2254 petition may not substitute "its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). Instead, AEDPA deference means that "a federal habeas court may overturn a state court's application of clearly established federal law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013). Indeed, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

"When, as here, there is no reasoned state-court decision on the merits, the federal court must determine what arguments or theories could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior [Supreme Court] decision[.]'" *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018). "If such disagreement

9

is possible, then the petitioner's claim must be denied." *Id.* So, even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98. "This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." *Id.* The Supreme Court has "often emphasized that this standard is difficult to meet because it was meant to be." *Sexton*, 138 S. Ct. at 2558.

## B.

As an initial matter, the State argued that the Court should afford AEDPA deference to DHO Locklear's decision. However, the State conceded that it "is also aware that the disciplinary hearing officers are not state courts and therefore the language of section 2254(d) and (e) does not technically apply." Response Br. 20. Though we have not yet considered this issue, the Seventh Circuit has rejected a similar argument, holding that because "prison disciplinary boards are not 'courts' for purposes of those provisions," they "are irrelevant to collateral review of prison disciplinary board decisions." *Higgason v. Davis*, 32 F. App'x 767, 767 (7th Cir. 2002); *see also Piggie v. McBride*, 277 F.3d 922, 925–26 (7th Cir. 2002) (observing that prison disciplinary boards are not "courts for purposes of 28 U.S.C. § 2254(d)"). We agree that the § 2254 deferential standard of review does not apply to the prison administrator's decision.

## C.

Before we can consider whether Tyler is entitled to federal habeas relief, we must

10

first determine which state court decision is the relevant one under review for AEDPA purposes. "Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why the state courts rejected a state prisoner's federal claims," and then "to give appropriate deference to that decision." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191–92 (2018). Normally, this is a straightforward inquiry. But here, we are faced with the infrequent circumstance where all three state courts—the trial court,[5] court of appeals,[6] and supreme court[7]—that heard Tyler's claims failed to explain why they rejected his petition.

Nevertheless, the Supreme Court has made clear that the highest state court decision—regardless of whether there is a reasoned decision below it—is the relevant one for § 2254 purposes. *See id.* at 1192 (holding that the Georgia Supreme Court's summary denial was the "relevant state-court decision on the merits" for § 2254 purposes); *Knowles*, 556 U.S. at 115, 121 (same for a California Court of Appeal's decision even though it did not "offer[] any reason for its rejection of th[e] . . . claim"). Accordingly, the relevant

---

[5] The Superior Court of Scotland County entered its order denying Tyler's habeas petition on June 28, 2017.

[6] The North Carolina Court of Appeals denied Tyler's petition for writ of certiorari on July 28, 2017.

[7] The Supreme Court of North Carolina denied Tyler's petition for discretionary review on August 18, 2017. The U.S. Supreme Court issued no intervening opinions between the Superior Court's order and the Supreme Court of North Carolina's summary denial. Therefore, the applicable law was the same for all three decisions. *See Sexton*, 138 S. Ct. at 2558 (noting that the federal court must ask "whether it is possible fairminded jurists could disagree that [the potential arguments or theories that could have supported the state court's decision] are inconsistent with the holding in *a prior [Supreme Court] decision*[.]").

decision for review here is the North Carolina Supreme Court's summary order of August 18, 2017.

### D.

Having established the proper standard of review and the relevant state court decision for AEDPA purposes, we consider Tyler's first issue on appeal—whether his due process rights were violated because the [DHO] did not introduce or personally review the requested surveillance video during his hearing. We begin by reiterating that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, when a disciplinary conviction results in the loss of earned good-time credit, a prisoner is entitled to process that includes: (1) written notice of the charge; (2) a hearing at which he or she has the qualified right to "call witnesses and present documentary evidence unless doing so would present an undue hazard"; and (3) a written statement detailing the evidentiary basis and reasons for the disciplinary action. *Dilworth v. Adams*, 841 F.3d 246, 253 (4th Cir. 2016); *see also Wolff*, 418 U.S. at 557–58, 563–65.

Tyler does not allege that the prison administrators failed to comply with the first and third requirements. Instead, he argues that under *Wolff*, the second requirement has been amplified such that DHO Locklear was obligated to personally review and consider any potentially relevant documentary evidence—including video footage—unless doing so would create an undue hazard to Scotland's institutional safety or correctional goals. *Wolff*, 418 U.S. at 566 (observing the need to balance an inmate's right to present evidence against the "obvious potential for disruption" that such evidence presentation might generate in a

12

prison setting); *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 815 (10th Cir. 2007) (holding that "documentary evidence" includes videotapes). In support of his argument, Tyler references our recent decision in *Lennear v. Wilson*, where we held that "if prison officials decide to deny an inmate access to . . . video surveillance evidence . . . then that determination must be made by the disinterested hearing officer, not prison officials involved in lodging the charge." 937 F.3d 257, 271 (4th Cir. 2019). Tyler contends this holding renders the Supreme Court of North Carolina's decision "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), despite the fact that *Lennear* came two years after the state court's decision.

We disagree. As a threshold matter, *Lennear* itself negates Tyler's reliance on it because our holding in that case made plain that we established a prisoner's right to compel review of video surveillance evidence "for the first time in this circuit," while recognizing that "to date [we have] not addressed whether the universe of 'documentary evidence' subject to the due process protections in *Wolff* encompasses surveillance evidence[.]" 937 F.3d at 268, 273. In other words, we merely "extend[ed]" the legal principles announced in *Wolff* "to a new legal context[.]" *White*, 572 U.S. at 425. Under the plain language of the *Lennear* decision, therefore, the Supreme Court of North Carolina did not unreasonably apply "clearly established Federal law." 28 U.S.C. § 2254(d)(1). This conclusion is buttressed by the fact that under AEDPA, the Supreme Court's holdings alone control our analysis and, to date, the Supreme Court has never held that the due process rights announced in *Wolff* extend to video evidence or that inmates possess a right to compel

13

DHOs to personally review such evidence during a disciplinary hearing.

Indeed, at the time of the North Carolina Supreme Court's summary denial, courts across the country had found no violation of prisoners' due process rights under similar circumstances. *See, e.g.*, *McKeithan v. Beard*, 322 F. App'x 194, 201 (3d Cir. 2009) (per curiam) ("[T]he videotape and photographs at most constitute potential exculpatory evidence, which prison officials have no constitutional obligation to preserve or consider."); *Neal v. Casterline*, 129 F. App'x 113, 115 (5th Cir. 2005) (per curiam) (holding that the DHO's failure to review a surveillance video did not violate an inmate's due process rights); *Williams v. Joyner*, No. 5:15-HC-2187-D, 2017 WL 3821694, at *4 (E.D.N.C. Aug. 8, 2017) (same), *report and recommendation adopted*, 2017 WL 3820949 (E.D.N.C. Aug. 31, 2017); *Griffith v. Stancil*, No. 5:10-HC-2048-D, 2011 WL 6130803, at *3 (E.D.N.C. Dec. 8, 2011) (same). Though this Court now, and some circuits previously, have reached different conclusions, *see, e.g.*, *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 173–74 (3d Cir. 2011); *Howard*, 487 F.3d at 814–15, that does not change the fact that at the time of the North Carolina Supreme Court's ruling, the right Tyler claims was not clearly established; many fairminded jurists did disagree.

Instead, *Young v. Lynch*, 846 F.2d 960 (4th Cir. 1988), is more germane to our analysis of how courts understood the legal principles announced in *Wolff* before the Supreme Court of North Carolina's decision in this case. In *Young*, a state prisoner was charged with a major disciplinary infraction for possession of marijuana. At his hearing, he alleged that the confiscated cigarette only contained rolling tobacco and asked the disciplinary committee to produce the butt. The committee refused and found the inmate

14

guilty.

In considering his appeal of a denial of his § 2254 petition based on the administrative finding, we confronted the question of whether prison officials could "exclud[e] potentially dispositive evidence [from disciplinary proceedings] that the[y] . . . confiscated and hold." *Id.* at 963–64. Though we determined that *Wolff* was not controlling because it did not affirmatively address this issue, we made clear that we did not find in the Supreme Court's jurisprudence a constitutional rule "requir[ing] the production of real evidence in every disciplinary hearing," even when the sought-after evidence would have been dispositive. *Id.* Applying the reasoning in *Young* to this case, the North Carolina Supreme Court's decision did not constitute an unreasonable application of clearly established federal law assuming it reached a similar conclusion. *See Young*, 846 F.2d at 963 (finding no "clearly established right to demand production of physical evidence" because *Wolff* "does not explicitly confer this right"). In other words, at the time of the entry of the denial order by the North Carolina Supreme Court, no clearly established federal law required the DHO to personally view the requested video as part of the disciplinary decision.

And there is an additional and relevant distinction between *Lennear* and this case: the petitioner in the former was a federal inmate seeking habeas relief under 28 U.S.C. § 2241, while Tyler is a state inmate proceeding under § 2254. As noted above, Tyler's burden is much higher given AEDPA's deferential standard of review because "the special deference we ordinarily accord to state court judgments under 28 U.S.C. § 2254 is inapplicable" on § 2241 claims. *Seay v. Cannon*, 927 F.3d 776, 780–81 (4th Cir. 2019).

15

In sum, as of the time of the North Carolina Supreme Court's decision, fairminded jurists could, and indeed, did disagree about the application of *Wolff* to a prisoner's claim to require the review of video evidence by the hearing officer in a disciplinary hearing. There was no "clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), on the issue.

Tyler has simply failed to show that the North Carolina Supreme Court's decision was "diametrically different, opposite in character or nature, or mutually opposed" to federal law as determined by the Supreme Court. *Vick*, 233 F.3d at 216. Consequently, and due to the deep respect we afford the North Carolina Supreme Court under our Constitution's coordinate judicial system and AEDPA, we do not find that court's decision "unreasonable" in denying Tyler's claim. We therefore affirm the district court's decision as to the first issue in the COA, albeit for different reasons than those stated by the court below. *See Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 75 n.13 (4th Cir. 2016) ("In our review, we may affirm on any grounds supported by the record, notwithstanding the reasoning of the district court.").

E.

We now turn to the second issue under the COA—whether Tyler's due process rights were violated because the record contained insufficient evidence to support his disciplinary conviction. Under the Supreme Court's decision in *Superintendent, Massachusetts Correctional Institution v. Hill*, there must be "some evidence" in the record to support the DHO's findings made during Tyler's hearing. 472 U.S. 445, 457 (1985). This is an exceedingly lenient standard, requiring only "a modicum of evidence" in order

16

"to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens." *Id.* at 455. Indeed, *Hill* "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [DHO]." *Id.* at 455–56. As long as the record is "not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary," *id.* at 457, courts need not grant habeas relief on this ground.

The clearest guidance we have from the Supreme Court on the scope of the "some evidence" standard comes from *Hill* itself. In that case, three state prisoners received disciplinary reports charging them with assaulting another inmate. At separate hearings for each offender, the prison disciplinary board heard testimony from a prison guard and received his written disciplinary report. According to the guard, he heard an inmate yell from a walkway that he could partially observe through his window. When the guard opened the door, he found an inmate bleeding from the mouth and suffering from a swollen eye. He saw three others jogging away together down the walkway. There were no other inmates in the area, which was enclosed by a chain link fence. The three respondents denied their involvement, and the victim provided a written statement that they had not caused his injuries. Nevertheless, the disciplinary board found them guilty of the assault and revoked 100 days of good time credit each. Applying the standard described above, the Supreme Court held that, "[a]lthough the evidence in this case might be characterized as meager, and there was no direct evidence identifying any one of three inmates as the assailant," the

17

record contained enough evidence to warrant denial of their § 2254 petition. *Id.* at 457.

Following the Supreme Court's guidance, our most recent published authority on this issue shows how deferentially we apply the "some evidence" standard. In *Baker v. Lyles*, a state inmate alleged his due process rights were violated by his conviction for possession of escape contraband and association with other inmates in an attempted escape, which he claimed "was based solely upon the hearsay statement of an unidentified informant, whose reliability was not established at the [disciplinary] hearing[.]" 904 F.2d 925, 926 (4th Cir. 1990). Contrary to the inmate's claims, however, we determined that the evidence before the warden at the time of his decision was much more expansive and included: the inmate's prior escape from the Baltimore County Jail, two security reports (including one attesting to the reliability of the source), and a hacksaw blade and jeweler's string produced by a source, who reported obtaining them from the inmate. *Id.* at 932–33. We held that this evidence satisfied the due process requirements announced in *Hill*. *Id.* at 933.

As these decisions make clear, the "some evidence" standard is extremely broad in scope and presents a very low burden for prison officials to meet. In Tyler's case, there is no indication that the North Carolina Supreme Court failed to correctly identify this standard as the "governing legal principle from the Supreme Court's decisions[.]" *Vick*, 233 F.3d at 216. Therefore, the sole question before us is whether the North Carolina Supreme Court "[]reasonably appli[ed] that [standard] to the facts of [this] case." *Id.*; *accord* 28 U.S.C. § 2254(d)(1).

In order to defeat Tyler's claim, the State need only point to "some evidence" in the

record—even if it is merely circumstantial—that he was guilty of the charged disciplinary offense. Here, that means that the State must point to evidence that supports the conclusion that Tyler knew that: (1) his allegation against Officer Gaddy was false and (2) if it were true that it could have exposed Officer Gaddy to criminal liability. Disciplinary Procedures, ch. B, § .0202(a)(A18); *cf. Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009) (holding that the adverb "knowingly" in a criminal statute applies "to all the subsequently listed elements of the crime"). As our discussion above shows, in the overwhelming majority of cases this should be an easy hurdle for the State to clear. But this case presents the exceedingly rare circumstance where the record contains *no* probative evidence to support the inmate's conviction. And while AEDPA still governs our analysis, we need not defer to the state court's decision when there is no probative evidence in the record to support its holding.

We agree with our sister circuits that "if 'some evidence' is to be distinguished from 'no evidence,' it must possess at least some minimal probative value if it is to be found adequate to satisfy the requirement of the Due Process Clause that the decisions of prison administrators must have some basis in fact." *Goff v. Burton*, 91 F.3d 1188, 1192 (8th Cir. 1996); *accord Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996) (explaining that, although the "some evidence" standard does not permit reweighing the evidence, the reviewing court "must nevertheless satisfy [itself] that the evidence the [DHO] did rely on presented sufficient indicia of reliability to permit [it] to conclude that [the] decision to revoke an inmate's good-time credits was not arbitrary"). Here, the State points to three pieces of "evidence" it contends meet the "some evidence" standard and support the DHO's

19

decision: Officer Gerald's written statement; Officer Smith's Investigation Report; and Officer Gaddy's written statement.[8]

But these items are, at most, neutral assertions or conclusory statements of culpability and are not affirmative evidence of Tyler's guilt. *See Sira v. Morton*, 380 F.3d 57, 80 (2d Cir. 2004) ("As the Supreme Court has long cautioned, a conclusory statement of culpability provides 'virtually no basis at all' for a reviewing officer to make a reasoned and independent judgment on the matter at issue." (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983))). Moreover, unlike the circumstantial evidence presented in *Hill* or the informant's statement and escape materials adduced in *Baker*, none of the pieces of evidence here actually substantiates Tyler's A-18 conviction. For example, there is no information in either Officer's statement or the Investigation Report about the content of Tyler's initial allegation or why it was determined to be unfounded. Similarly, there is no indication in the record that Tyler knew his accusation was false or knew that it could have led to criminal charges against Officer Gaddy. Indeed, Officer Gerald's written statement and Officer Smith's Investigation Report make clear that they had no personal knowledge of the underlying events that gave rise to the charge.

Officer Gerald's written statement provides only that Tyler made an allegation against a staff member that was subsequently investigated and determined to be

---

[8] The State also directs our attention to Tyler's assertions from his initial § 2254 petition. However, Tyler's petition cannot qualify as "some evidence" to substantiate the DHO's determination if for no other reason than the fact that it did not exist at the time of his disciplinary hearing. Therefore, it "could [not have] support[ed] the conclusion reached by the [DHO]." *Hill*, 472 U.S. at 455–56.

"unfounded." J.A. 4. Absent more, that statement provides no basis to support the DHO's decision as it reflects nothing about Tyler's intent. *See Moore v. Plaster*, 266 F.3d 928, 931–32 (8th Cir. 2001) (holding that, where conduct report merely stated, without suggesting the reporting officer's personal knowledge, that a visitor had possessed narcotics inside a prison and "[a]n investigation of this incident revealed that [the inmate plaintiff] conspired to have the narcotics brought into [the prison]," the conduct report was "only an accusation" and "d[id] not qualify as 'evidence'"), *disagreement recognized by Hartsfield v. Nichols*, 511 F.3d 826, 830–31 (8th Cir. 2008).

Similarly, the Investigation Report contained only Officer Smith's description of the video and her unexplained affirmation that she "verified [Gerald's] statement." J.A. 5. Officer Smith provided no indication that she had any personal knowledge regarding the information in her report and offered no explanation for her conclusion that the video "neither took away nor added to the reporting partys [*sic*] statement." J.A. 5. By its own terms, none of this can be considered probative and the DHO was left to speculate as to what, if any, affirmative evidence of guilt Officer Smith considered. *Cf. Luna v. Pico*, 356 F.3d 481, 489 (2d Cir. 2004) (finding that a disciplinary conviction was not supported by "some evidence" where "the 'evidence' consisted solely of a bare accusation by a victim who then refused to confirm his initial allegations" and statements, consisting of multiple levels of hearsay, of officers who made no "apparent effort . . . to evaluate [the victim's] credibility" or the truthfulness of the victim's allegation).

We likewise conclude that Officer Gaddy's written statement that he "ha[d] no knowledge" of Tyler's "displainary [*sic*] issue" is not affirmative evidence of Tyler's guilt.

21

Though this statement is possibly susceptible to different interpretations, *see* J.A. 95 (finding that it was "tantamount to a denial of [Tyler's] allegation of sexual assault"), the most reasonable is a flat denial of any knowledge regarding Tyler's A-18 disciplinary charge. Given this ambiguity and the absence of further explanation or evidence in the hearing record, it also is unclear how the DHO construed Officer Gaddy's statement, and thus the extent to which she relied on it in determining Tyler's guilt. *See* J.A. 6 ("Sgt. Gaddy stated that he had no knowledge of the inmate's disciplinary issue."). But even if we were to construe Officer Gaddy's statement as a flat denial, it would still not constitute evidence of the requisite *mens rea* to support Tyler's conviction because it would lend no support to the DHO's conclusion that Tyler knew that his sexual assault allegation was false and that he knew that the allegation could have exposed the officer to criminal liability.

Finally, the DHO's conclusion that "no evidence can be found to support the inmates [*sic*] allegations," J.A. 6, cannot constitute "some evidence" that Tyler affirmatively made a knowingly false accusation that he knew could expose Officer Gaddy to criminal liability. Under settled law, defendants do not bear the burden of proving the negative, i.e., disproving elements of the charged offense (regardless of the government's standard of proof). *See, e.g.*, *Patterson v. New* York, 432 U.S. 197, 215 (1977). It is always the State's burden to prove guilt, even under the "some evidence" standard. But here, the State attempts to shift the burden to Tyler, instead of the State affirmatively proving its charge. Even if we assume that Tyler's initial complaint was, in fact, unfounded, that does not prove that it was necessarily false or that he knew it was false. The lack of evidence to

support Tyler's initial allegation does not mean by default that he affirmatively committed an A-18 offense. The State must point to something more on Tyler's part to show that he possessed the required *mens rea*, but it has failed to do so in this record.

In conclusion, we repeat our admonition that this is the very rare case where federal habeas relief will be available due to a total absence of evidence in the record, even under the "some evidence" standard, to support a disciplinary conviction. As a result, Tyler's disciplinary conviction amounted to a violation of his due process rights and we vacate the district court's grant of summary judgment denying his § 2254 petition on this ground. Tyler is therefore entitled to habeas relief restoring his forfeited good-time credits which the district court is to undertake upon remand.

## III.

For the reasons set forth above, we conclude that the district court correctly denied Tyler's § 2254 petition as it pertains to the DHO's decision not to review the video evidence during his disciplinary hearing. But we hold that the court erred in finding that Tyler's conviction was supported by "some evidence" in the record. Therefore, the district court's judgment is

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED WITH INSTRUCTIONS.*