**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 22-6836**

─────────────

MIGUEL DE PAULA ARIAS,

　　　　　　Petitioner - Appellant,

　　　v.

WARDEN FCI WILLIAMSBURG,

　　　　　　Respondent - Appellee.

─────────────

Appeal from the United States District Court for the District of South Carolina, at Florence. Henry M. Herlong, Jr., Senior District Judge.  (4:21-cv-02962-HMH)

─────────────

Submitted:  April 18, 2024　　　　　　　　　　Decided:  April 26, 2024

─────────────

Before AGEE and THACKER, Circuit Judges, and KEENAN, Senior Circuit Judge.

─────────────

Vacated and remanded by unpublished per curiam opinion.

─────────────

Miguel De Paula Arias, Appellant Pro Se.  Cate Cardinale, Assistant United States Attorney, Marshal Prince, II, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Miguel De Paula Arias, a federal inmate, appeals the district court's order accepting the recommendation of the magistrate judge; granting summary judgment in favor of Respondent, the Warden of Federal Correctional Institution Williamsburg; and dismissing De Paula Arias' 28 U.S.C. § 2241 petition challenging a decision of a Disciplinary Hearing Officer ("DHO"). When granting summary judgment, the district court concluded that the magistrate judge did not clearly err in denying De Paula Arias' motion for leave to conduct discovery. De Paula Arias challenges that decision, too. We vacate the district court's order and remand so that De Paula Arias may conduct the discovery necessary to resolve his § 2241 petition.

I.

On October 15, 2019, prison employee Magdeline Mirabal submitted Incident Report Number 3316154 accusing De Paula Arias of "strok[ing] [her] right bottom behind from bottom to top." (E.R. 105 (internal quotation marks omitted)).* This incident occurred at approximately 11:30 a.m. near the commissary area of the prison yard. Based on Mirabal's report, De Paula Arias was charged with violating Code 229, a "[s]exual assault of any person, involving non-consensual touching without force or threat of force" ("Code 229 incident report"). (E.R. 105). De Paula Arias did not receive a copy of the Code 229 incident report right away because the case had been referred to the Federal Bureau of Investigation ("FBI") for possible criminal prosecution. On November 13, 2019,

---

* Citations to "E.R." refer to the electronic record filed in this court.

at 7:25 p.m., after the FBI deferred the case, Lieutenant D. Davis delivered the Code 229 incident report to De Paula Arias. De Paula Arias proclaimed his innocence and confirmed that he understood his due process rights. D. Davis then referred the case to the Unit Discipline Committee ("UDC") for a hearing and noted that the Code 229 incident report was related to Incident Report Number 3327755, though he did not provide any other information about the related report. De Paula Arias maintained his innocence before the UDC, and, due to the severity of the charge, the UDC referred the case to DHO R. Hudson on November 14, 2019, at 10:50 a.m.

At the hearing before Hudson on November 18, 2019, De Paula Arias waived his right to the assistance of a staff representative but requested fellow inmate Mark Winnick as a witness. According to Hudson's report, Winnick testified, "I was following Aries [sic] out of the unit. I did not see anything," and De Paula Arias testified, "I deny this completely. It is not in my DNA." (E.R. 111 (internal quotation marks omitted)). Hudson also reported that De Paula Arias did not present any documentary evidence. Based on Mirabal's report and his assessment of Mirabal's and De Paula Arias' credibility, Hudson concluded that the greater weight of the evidence supported the finding that De Paula Arias violated Code 229. Hudson sanctioned De Paula Arias to a day in disciplinary segregation, the loss of 27 days of good conduct time, and 180 days without email, visitation, and commissary privileges.

During his administrative appeals, De Paula Arias faulted Hudson for failing to consider Winnick's written declaration, deliberately misstating Winnick's testimony in the report, and failing to consider the Special Investigative Services ("SIS") report about the

3

incident ("SIS incident report"). As for the latter contention, De Paula Arias explained that his charge had been reduced after the SIS conducted its investigation because the primary investigator, SIS Technician Kathleen Andino, concluded that Mirabal's statement lacked candor and was not supported by the witnesses Andino interviewed, including other staff members. De Paula Arias attached the SIS incident report to his § 2241 petition, but the Incident Report Number was absent or redacted on that document. According to the report, the incident occurred on October 20, 2019, at approximately 11:30 a.m., near the commissary area of the prison yard. The report also indicated that De Paula Arias admitted to Andino that he walked behind Mirabal, crossed over the yellow line, and brushed his left shoulder against Mirabal's back. At the conclusion of the SIS investigation on November 13, 2019, De Paula Arias was charged with violating "[C]ode 316, being in an unauthorized area, [and] [C]ode 498, interfering with a staff member most like [C]ode 409, unauthorized physical contact." (E.R. 39).

D. Davis delivered the SIS incident report to De Paula Arias on November 13, 2019, at 7:25 p.m. At the hearing before the UDC on November 14, 2019, around 10:30 a.m., De Paula Arias maintained that he accidentally brushed up against Mirabal as he was walking through the crowded commissary area. Based on the SIS incident report and De Paula Arias' admission, the UDC found that De Paula Arias committed the prohibited acts and sanctioned him to 30 days without phone privileges for violating Code 316 and to 30 days without visitation privileges for violating Code 498.

After his administrative appeals related to the Code 229 incident report were unsuccessful, De Paula Arias filed a § 2241 petition in the district court, maintaining that

4

Hudson improperly refused to accept a copy of Winnick's declaration, mischaracterized Winnick's testimony, and wrongfully failed to consider the SIS incident report. Respondent moved for summary judgment, arguing that De Paula Arias received all the process he was due under *Wolff v. McDonnell*, 418 U.S. 539 (1974), and that Hudson's decision should be upheld because it was supported by some evidence. Addressing the SIS incident report, Respondent confirmed that the report "concern[ed] the same events at issue in the instant case" but argued that the report was not helpful to De Paula Arias because "it directly contradicts both his witness statement and his own statement and denial of guilt during the DHO hearing." (E.R. 100-01). That is, because De Paula Arias admitted to Andino that he brushed up against Mirabal as he was walking through the crowded commissary area, Hudson's consideration of the SIS incident report "would more likely have harmed [De Paula Arias'] case." (E.R. 101). Directly after acknowledging that the SIS incident report concerned the same event as the Code 229 incident report, Respondent stated that the SIS incident report "is a separate disciplinary action which was handled by UDC, and was held prior to the DHO hearing" and, therefore, "does not 'supersede' the [Code 229] incident report." (E.R. 101).

De Paula Arias did not respond to the motion for summary judgment right away. Instead, he served Respondent with a request for production of documents. Receiving no response after multiple attempts, De Paula Arias moved to compel Respondent to produce, among other documents, information related to the SIS investigation, which he needed to prove that he did not sexually assault Mirabal. Respondent opposed the motion to compel, arguing that the SIS incident report would not help De Paula Arias in light of "the minimal

standard applicable in disciplinary cases." (E.R. 191).  The magistrate judge agreed with Respondent and denied De Paula Arias' motion to compel.

Thereafter, along with his response in opposition to the motion for summary judgment, De Paula Arias moved for leave to conduct discovery.  De Paula Arias maintained that, before Hudson conducted the hearing and issued his report, there was an SIS investigation of the incident, during which De Paula Arias told Andino that he did not stroke Mirabal's bottom, as she alleged.  De Paula Arias further claimed that Andino's notes should reflect that he asked for the surveillance video during their first interview.

According to De Paula Arias, when he spoke with Andino and another SIS Technician after they finished the investigation, they advised him "that they were recommending that the [Code 229 incident] report be downgraded to a superseding report with lesser charges that did not include sexual assault."  (E.R. 204).  This made sense to De Paula Arias because, while he admitted accidentally brushing up against Mirabal and crossing over the yellow line, he adamantly denied that any contact was sexual.  The SIS Technicians also purportedly told De Paula Arias that they had forwarded their report to Hudson and that they did not believe De Paula Arias would have a disciplinary hearing based on their recommendations.  De Paula Arias acknowledged that the SIS incident report referred to an event on October 20, but he argued that this was a typographical error, as Andino was clearly referring to the same incident with Mirabal, which occurred on October 15.

De Paula Arias averred that Hudson's failure to consider the SIS incident report was particularly problematic because SIS Technicians are trained to handle investigations into

6

alleged sexual abuse and, therefore, their recommendations should carry more weight. In that vein, De Paula Arias claimed that Andino said on the day she concluded her investigation, "I can't tell you much, but I can tell you that the incident did not go down like [Mirabal] indicated." (E.R. 206 (internal quotation marks omitted)). Andino also purportedly told De Paula Arias that "Mirabal has a history of being combative with inmates" and that none of the individuals at the scene corroborated Mirabal's account of the incident. (E.R. 206 (internal quotation marks omitted)).

Based on this information, De Paula Arias argued that he had established good cause for discovery of the documents he previously requested from Respondent. Alternatively, he asked the district court for leave to request a subset of those documents, including any materials related to the SIS incident report and investigation.

In opposing the motion for summary judgment, De Paula Arias took issue with Respondent's contention that Hudson's consideration of the SIS incident report would have harmed his case. To the contrary, De Paula Arias argued, the SIS incident report and the downgraded charges would have supported his repeated assertion that, while he accidentally touched Mirabal, he never stroked her bottom. And, again, he insisted that the materials he requested would exonerate him and remove the stigma and loss of privileges associated with being deemed a sex offender in the prison system.

The magistrate judge denied De Paula Arias' motion for leave to conduct discovery, concluding that the materials De Paula Arias requested were not necessary to resolve the § 2241 petition because where, as here, "there is some evidence to support the [disciplinary] decision, the decision will not be disturbed." (E.R. 264). To that end, the

7

magistrate judge recommended granting Respondent's motion for summary judgment because De Paula Arias received the due process protections outlined in *Wolff* and Hudson's decision was supported by some evidence.

In his objections, De Paula Arias argued that the magistrate judge did not use the correct legal standard when analyzing the due process claims. The question was not whether he received the procedural protections outlined in *Wolff* or whether some evidence supported Hudson's decision. Rather, De Paula Arias argued, when a petitioner challenges a prison disciplinary decision on the ground that the DHO did not consider certain evidence, the question is "whether the excluded evidence could have 'aided' the inmate's defense." (E.R. 289 (citing *Lennear v. Wilson*, 937 F.3d 257 (4th Cir. 2019))). De Paula Arias insisted that the SIS incident report, which Andino prepared after interviewing witnesses and reviewing the surveillance video, very clearly would have aided his defense, as it established that he did not sexually assault Mirabal but accidentally brushed up against her in the crowded prison yard. De Paula Arias also challenged the magistrate judge's order denying his motion for leave to conduct discovery, maintaining that he needed the materials related to the SIS investigation to establish his innocence.

The district court accepted the magistrate judge's recommendation, granted Respondent's motion for summary judgment, and dismissed De Paula Arias' § 2241 petition. At one point in its opinion, the court concluded that Winnick's statement in his written declaration—that he did not see any physical contact between De Paula Arias and Mirabal—contradicted De Paula Arias' admission to Andino that he accidentally brushed up against Mirabal while walking through the crowded prison yard. Later in its opinion,

8

however, the court concluded that the SIS incident report containing that admission was unrelated to the October 15 incident and, therefore, any error in Hudson's failure to consider the report was harmless. The court rejected De Paula Arias' argument that the date on the SIS incident report—October 20—was a typographical error, finding that "nothing in the record supports this allegation." (E.R. 314). To the contrary, the court explained, the UDC had already adjudicated the reduced charges under Codes 316 and 498 when De Paula Arias had his hearing before Hudson. Further supporting its conclusion that the incident reports described separate events, the court observed that the UDC referred the October 15 incident to the DHO but did not refer the October 20 incident to the DHO. The court found, however, that even if the SIS incident report concerned the October 15 event, De Paula Arias "failed to timely request consideration of the report," as he "did not attempt to present any documentary evidence" at the hearing. (E.R. 314). Finally, the district court concluded that the magistrate judge did not clearly err in denying De Paula Arias' motion for leave to conduct discovery because the record was sufficient to conclude that Hudson's decision was based on some evidence and that Hudson did not violate De Paula Arias' due process rights when rendering the decision.

## II.

"We review an order granting summary judgment de novo, applying the same standards as the district court." *Roberts v. Gestamp W. Va., LLC*, 45 F.4th 726, 732 (4th Cir. 2022); *see Lennear*, 937 F.3d at 267 (explaining that denial of § 2241 petition is reviewed de novo). "[T]he pertinent inquiry" at this phase "is whether there are any genuine factual issues that only a factfinder can resolve because they may reasonably be

9

resolved in favor of either party." *Roberts*, 45 F.4th at 732 (internal quotation marks omitted). When "deciding whether the nonmoving party has raised a genuine dispute of material fact, we must view the evidence in the party's favor and refrain from weighing the evidence or making credibility determinations." *Id.* (internal quotation marks omitted). However, "the mere existence of a scintilla of evidence is insufficient to withstand an adequately supported summary judgment motion," and "conclusory allegations or denials, without more, are insufficient to preclude granting a summary judgment motion." *Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 702 (4th Cir. 2023) (alterations and internal quotation marks omitted).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. Nevertheless, "[c]onstitutional procedural due process protections extend to prison disciplinary proceedings that could adversely impact an inmate's liberty interests—such as the loss of good time credits at issue here." *Lennear*, 937 F.3d at 268. These rights include: 24 hours' advance written notice of the disciplinary charge; a written statement of the evidence relied on and the reasons for the sanctions; a qualified right to call witnesses and present evidence, including video surveillance evidence; a right to staff assistance if the prisoner is illiterate or the issues are complex; and a right to an impartial factfinder. *Wolff*, 418 U.S. at 563-66, 571-72; *see Lennear*, 937 F.3d at 269 (holding "that prison video surveillance evidence constitutes documentary evidence subject to the procedural due process protections recognized in *Wolff*"). Any "procedural errors in disciplinary proceedings are subject to harmless error review." *Lennear*, 937 F.3d at 276. And "in

10

evaluating whether prison officials' failure to disclose or consider evidence was harmless, courts must determine whether the excluded evidence could have aided the inmate's defense." *Id.* at 277.

Substantively, a finding of guilt in a prison disciplinary proceeding must be supported by "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). "This is an exceedingly lenient standard, requiring only a modicum of evidence in order to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens." *Tyler v. Hooks*, 945 F.3d 159, 170 (4th Cir. 2019) (internal quotation marks omitted). This inquiry "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [DHO]." *Hill*, 472 U.S. at 455-56. But "if some evidence is to be distinguished from no evidence, it must possess at least some minimal probative value if it is to be found adequate to satisfy the requirement of the Due Process Clause that the decisions of prison administrators must have some basis in fact." *Tyler*, 945 F.3d at 171 (internal quotation marks omitted).

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). But "[u]nder Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Court, a district court may authorize discovery upon a showing of 'good cause' by a petitioner." *Juniper v. Zook*, 876 F.3d 551, 572 n.9 (4th Cir. 2017); *see* Rule 1(b), Rules Governing Section 2254 Cases in the United States District Court (authorizing courts to

11

apply rules to petitions filed under § 2241).  "Good cause is shown if the petitioner makes a specific allegation that shows reason to believe that the petitioner may be able to demonstrate that he is entitled to relief."  *Quesinberry v. Taylor*, 162 F.3d 273, 279 (4th Cir. 1988).  "We review for abuse of discretion a district court's decision not to authorize discovery on a habeas corpus claim."  *Stephens v. Branker*, 570 F.3d 198, 207 (4th Cir. 2009).  "A court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law."  *Hicks v. Ferreyra*, 64 F.4th 156, 171 (4th Cir. 2023) (internal quotation marks omitted), *cert. denied*, 144 S. Ct. 555 (2024).

### III.

The district court concluded that there was no evidence in the record to support De Paula Arias' contention that the date on the SIS incident report—October 20—was a typographical error and that the report was actually describing the incident on October 15, the subject of the Code 229 incident report.  But we have found multiple facts that could support the conclusion that the SIS incident report and the Code 229 incident report concerned the same event.  First, the SIS incident report, like the Code 229 incident report, described De Paula Arias allegedly touching Mirabal at 11:30 a.m. near the commissary.  Left unexplained is how De Paula Arias could have touched Mirabal a second time (on October 20) at the exact same time in the exact same place, especially considering that the record suggests he was transferred to the Special Housing Unit after he touched her on October 15.  Second, D. Davis delivered both reports to De Paula Arias on

12

November 13, 2019, at 7:25 p.m. The delay between October 15, the date of the event on the Code 229 incident report, and November 13, the date De Paula Arias received that report, was attributed to the referral of the case to the FBI for possible criminal prosecution. While there is no explanation in the current record for the delay in De Paula Arias' receipt of the SIS incident report, it is possible that the SIS was investigating the same incident—that is, the incident that occurred on October 15.

To be sure, the district court correctly observed that the reduced charges under Codes 316 and 498 had already been adjudicated in a separate UDC proceeding before Hudson conducted the hearing on the Code 229 incident report. And the UDC did not refer the SIS incident report to a DHO but instead sanctioned De Paula Arias to 30 days without telephone and visitation privileges. As explained, though, the same event could have produced two incident reports, one of which was investigated by the SIS and one of which was investigated by the FBI. Indeed, D. Davis remarked on the Code 229 incident report that there was a related incident report, and, because the Incident Report Number on the SIS incident report is absent or redacted, the current record does not reveal whether the SIS incident report is the related report to which D. Davis was referring.

Respondent's motion for summary judgment does not help solve this mystery. At one point in the motion, Respondent remarked that the SIS incident report involved a separate disciplinary action that was handled by the UDC, suggesting that the report described a different event than the one in the Code 229 incident report, which was referred to Hudson. Directly before that, however, Respondent remarked that the SIS incident report arose out of the same event at issue in this case but argued that Hudson's

13

consideration of that report would have harmed De Paula Arias' case, as De Paula Arias admitted to Andino that he brushed up against Mirabal while walking through the crowded commissary area. Not only does this latter statement conflict with the conclusion that the two incident reports described separate events, but also Respondent's interpretation of De Paula Arias' admission to Andino is debatable. While De Paula Arias denied stroking Mirabal's bottom in a sexual manner, he never denied accidentally touching her or crossing over the yellow line. He also explained that this is why the SIS downgraded his charge from sexual assault to being in an unauthorized area and unauthorized physical contact.

Similarly, the district court's order does not lend clarity to the issue of whether the Code 229 incident report and the SIS incident report described the same event. As explained, the court rejected De Paula Arias' argument that the date on the SIS incident report—October 20—was a typographical error. So, in the court's view, there were two events: one that occurred on October 15 and one that occurred on October 20. The court, however, contradicted itself in another portion of the opinion when it used De Paula Arias' admission to Andino during the SIS investigation that he accidentally brushed up against Mirabal to reject De Paula Arias' claim that Hudson mischaracterized Winnick's testimony. Thus, in rendering this conclusion, the court indicated that the Code 229 incident report about which Winnick testified concerned the same event that the SIS investigated.

Covering its bases, the district court found in the alternative that, even if the Code 229 incident report and the SIS incident report described the same event, Hudson did not err by failing to consider the SIS incident report because De Paula Arias did not attempt

14

to present any documentary evidence at the hearing.  Not only does this alternative finding suggest that the court was not entirely positive that the two reports described separate events, but also the finding does not address De Paula Arias' assertion that Andino said she had forwarded the SIS incident report and investigation summary to Hudson.  If De Paula Arias believed that Hudson already had the report, then there was no reason to present the report to Hudson at the hearing.  Moreover, there is an unresolved conflict between Hudson's statement that De Paula Arias did not attempt to provide any documentary evidence in his defense and De Paula Arias' claim that Hudson declined to review Winnick's written declaration.

Overall, the current record does not reveal whether the Code 229 incident report and the SIS incident report concerned the same event, and this ambiguity calls into question the district court's conclusion that De Paula Arias did not establish good cause for discovery.  Reviewing the materials prepared and reviewed by the SIS Technicians could clarify whether, in fact, the reports concerned the same event.  Moreover, De Paula Arias correctly asserts that the question of whether Hudson's failure to review the SIS incident report was harmless turns not on whether there is some evidence in the record to support Hudson's decision but on "whether the excluded evidence could have aided [De Paula Arias'] defense." *Lennear*, 937 F.3d at 277.  And if the event occurred as De Paula Arias described to Andino, then it is possible that Hudson's review of the SIS incident report could have aided in De Paula Arias' defense.

IV.

Accordingly, we vacate the district court's order and remand so that De Paula Arias may conduct discovery to the extent necessary to determine whether the Code 229 incident report and the SIS incident report arose from the same event and, if so, why two incident reports were produced for the same event. After obtaining that information, the district court should consider again whether Hudson's review of the SIS incident report could have aided in De Paula Arias' defense. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*VACATED AND REMANDED*