Filed 10/26/23  P. v. Standley CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>CAMERON STANDLEY,<br>    Defendant and Appellant. | A162844<br><br>(Alameda County Super. Ct. No. 20-CR-004678) |

A jury found defendant, Cameron Standley, guilty of robbery (Pen. Code,[1] § 211) and found true the allegation that he had personally used a firearm in the commission of that crime (§§ 12022.5, subd. (a), 12022.53, subd. (b)). In this appeal, Standley asks us to do three things: (1) reverse his conviction for the trial court's purported error in admitting certain evidence identifying Standley as the robber; (2) independently review the record of the in-camera proceedings on his *Pitchess*[2] motion; and (3) remand his case for resentencing under the recently amended section 1170,

---

[1] All subsequent statutory references are to the Penal Code unless otherwise noted.

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

1

subdivision (b). We affirm Standley's conviction because he has shown no error in his trial and the record reveals no abuse of discretion in the *Pitchess* proceedings. However, we agree that Standley is entitled to a new sentencing hearing, so we remand the matter for that purpose.

## BACKGROUND

On January 31, 2020, Edward Tyson and his fiancée were on their way home from a night at the casino when they stopped at a gas station. Working in concert with at least two other people, a man with dreadlocks robbed Tyson at gunpoint, taking his distinctive "Indian pendant" necklace. Police reviewed video surveillance footage of the crime, in which the gunman could be seen wearing a black beanie, distressed jeans, and Nike Air Force 1 sneakers. When Standley was arrested 18 hours after the robbery, he had dreadlocks, carried a black beanie, and wore distressed jeans that looked like the jeans in the footage, along with Nike Air Force 1 sneakers and Tyson's Indian pendant necklace.

The investigating officer, Oakland Police Officer Khem, prepared two series of six photographs in which each photograph depicted a different person. One of these "six-packs" included Standley. Another officer, Aguilar, used the six-packs to conduct a photographic lineup for Tyson on February 19, less than a month after the robbery. Before administering the lineup, Aguilar gave Tyson an admonition warning that "The person who committed the crime may or may not be included. . . . [Y]ou should not feel you have to make an identification." However, Aguilar also told Tyson that Khem "probably already knows who they are," and that "this is more of . . . a follow-up investigation."

The first six-pack contained a photograph of a man police suspected to be Standley's accomplice in the robbery. It also included five "fillers,"

2

photographs chosen because their subjects "have the same characteristics" as the suspect around whom the six-pack is constructed. After reviewing the first six-pack, Tyson identified a filler instead of the other suspect and remarked: "And then I think he was . . . [w]ith - there was another one with a - with a yellow shirt on []cause this guy was not . . . ." Aguilar interrupted, telling Tyson that "there[] are two suspects" and to "[k]eep in mind [that] there might be one in" the other six-pack. Regarding photograph No. 4, depicting a man in a yellow shirt, Tyson then said, "No, not him for sure."

When Tyson reviewed, one by one, the photographs of the second six-pack, he paused for 16 seconds to scrutinize Standley's picture — No. 3. When he finished looking at all six pictures, Tyson said, "Three look [*sic*] like . . . ." The following exchange ensued:

Aguilar: "three?"

Tyson: "yeah"

Aguilar: "I saw you kinda took your time with that . . ."

Tyson: "yeah yeah"

Aguilar: "and so number three"

Tyson: "yeah"

According to Tyson, the gunman who took Tyson's necklace was shown in photograph 3.

Standley moved in limine to exclude any testimony concerning that identification, along with "any subsequent in-court identification[] by . . . Tyson . . . ," arguing that the photographic lineup procedures observed by Aguilar "violated . . . Standley's due process rights . . . ." On April 20, the trial court denied that motion, noting some of Aguilar's "troubling" behavior, but finding that "as a whole" the procedures were not "unduly suggestive."

Tyson was outside the courtroom that day, waiting to be called as a witness in the event that his testimony was needed regarding the identification's reliability. There, the prosecutor showed Tyson a February 1 booking photograph of Standley and asked Tyson whether he recognized the person in the photograph. In response to this single-photograph showup, Standley filed a renewed motion to exclude Tyson's testimony. Again, the trial court denied the motion on the ground that the procedure was not "unduly suggestive."

At trial, Tyson identified Standley in court as the robber, and Standley was found guilty as charged. This appeal followed.

## DISCUSSION

### 1. There Was No Substantial Likelihood of Misidentification

Standley argues that the trial court erred in admitting two related lines of evidence: Tyson's "pretrial identification" of Standley from the six-pack, and Tyson's subsequent in-court identification of Standley. We disagree.

"In determining whether a defendant's right to due process is violated by the admission of identification evidence, we consider '(1) whether the identification procedure was unduly suggestive and unnecessary, and, if so, (2) whether the identification itself was nevertheless reliable under the totality of the circumstances.' [Citation.] A claim that an identification procedure was unduly suggestive raises a mixed question of law and fact to which we apply a standard of independent review, although we review the determination of historical facts regarding the procedure under a deferential standard." (*People v. Clark* (2016) 63 Cal.4th 522, 556–557.)

To be unduly suggestive, the challenged "procedure must ' "give rise to a very substantial likelihood of irreparable misidentification." ' [*Neil v.*

4

*Biggers* (1972) 409 U.S. 188,] 197 (quoting *Simmons v. United States*, (1968) 390 U.S. 377, 384). It is not enough that the procedure 'may have in some respects fallen short of the ideal.' *Id.*, at [pp.] 385–386. Even when an unnecessarily suggestive procedure was used, 'suppression of the resulting identification is not the inevitable consequence.' *Perry* [v. *New Hampshire* (2012)] 565 U.S. [228,] 239. Instead, 'the Due Process Clause requires courts to assess, on a case-by-case basis, whether improper police conduct created a "substantial likelihood of misidentification." ' " *Ibid.* (quoting *Biggers*, *supra*, at [p.] 201). (*Sexton v. Beaudreaux* (2018) \_\_\_U.S.\_\_\_ [138 S.Ct. 2555, 2559].) On appeal, the defendant "bears the burden of showing unfairness as a demonstrable reality, not just speculation." (*People v. DeSantis* (1992) 2 Cal.4th 1198, 1222.)

Standley has failed to meet that burden here. Quoting *People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 768, Standley observes that a "procedure is unfair if it suggests in advance the identity of the person police suspect." However, none of the defects Standley adduces in the photographic lineup procedure demonstrates such unfairness. First, although it was entirely inappropriate for Aguilar to say that Khem "probably already [knew] who" the perpetrators were, that statement did not suggest that Standley's photograph was the one to choose. For the same reason, Standley has not made the requisite showing of unfairness by noting that Aguilar failed to "cure" that error by rereading the admonition he had read Tyson eight minutes earlier, warning that "[t]he person who committed the crime may or may not be included."

Second, Standley has demonstrated no unfairness in Aguilar's failure to explore Tyson's comment on the man in the yellow shirt. Not only did Tyson repudiate any notion that he was identifying that man as one of the

robbers, the trial court expressly did "not find based on [its] review of the" video footage "that when . . . Tyson had an interest in the man in the yellow shirt, that that was a quote unquote 'ID.' " Considering that the robbery was committed by more than one person, and that Tyson identified Standley specifically as the gunman, it is highly unlikely in any case that Tyson thought he saw the gunman in the first six-pack, comprising photographs of people who shared physical characteristics with a *different suspect.*

Third, the record does not support Standley's contention that it was "Aguilar . . . who first suggested . . . Standley was a suspect." We agree with the trial court that Tyson did not make "a straight up ID" when he spoke the words, "number three . . . look [*sic*] like." But that does not mean that Tyson was not first to *suggest* that Standley was a suspect. As the trial court also noted, "the focus . . . on number 3, Mr. Standley, began from Mr. Tyson. Mr. Tyson reviewed most of the photographs very carefully, but when he got to Mr. Standley's photo, . . . he spent two or three times as long focusing on that photograph." In that context, the words, "number three . . . look [*sic*] like" reflect Tyson's serious and intense consideration of the man in photograph 3 as a suspect, before Aguilar's interruption. And because Tyson had already carefully reviewed all of the photographs, the special attention he paid to Standley's picture undercuts Standley's argument that the procedure was rendered unfair by Aguilar's purported failure to revisit every other photograph in Standley's six-pack. In short, however flawed Aguilar's procedure was, it did not result in any substantial likelihood of misidentification.

Finally, Standley argues that Tyson's in-court identification should have been excluded because it was tainted by both the photographic lineup and the later "single-photograph showup" conducted outside the courtroom on

6

April 20. We have already explained that there was no error in admitting the photographic lineup evidence, and we conclude accordingly that the in-court identification could not have been tainted in that respect.

Neither was the single-photograph showup unduly suggestive. "[A]lthough a one-person showup may pose a danger of suggestiveness, such showups 'are not necessarily or inherently unfair.' " (*People v. Medina* (1995) 11 Cal.4th 694, 753.) Here, two months after the initial photographic lineup, Tyson was presented with another photograph of Standley that had been taken on a separate occasion. After viewing that photograph, the trial court remarked: "I actually would never have guessed this was taken at a police station. I do note that the person in the photograph is not wearing shoes, but the person is wearing street clothes as opposed to jail attire. The room itself is [bare], but it could be anyone's garage or backyard." Tyson was asked only whether he recognized the person in the picture. On this record, Standley is unable to meet his burden of demonstrating "unfairness as a demonstrable reality, not just speculation." (*People v. DeSantis*, *supra*, 2 Cal.4th at p. 1209.)

If " 'we find that a challenged procedure is not impermissibly suggestive, our inquiry into the due process claim ends.' " (*People v. Ochoa* (1998) 19 Cal.4th 353, 412, quoting *United States v. Bagley* (9th Cir. 1985) 772 F.2d 482, 492.) Here, neither the photographic lineup nor the single-photograph "showup" were unduly suggestive. For that reason, Tyson's in-court identification of Standley was not tainted and the trial court did not err in admitting the identification evidence at issue here.

### 2. There Was No Abuse of Discretion in the Trial Court's Ruling on Standley's Pitchess Motion

Before trial, Standley's counsel moved under the Evidence Code sections enacted after the publication of *Pitchess*, for the disclosure of

evidence contained in the personnel files of two police officers identified by Standley as being involved in the investigation of his case. The People separately filed their own *Pitchess* motion, requesting that the trial court review the file of a certain police services technician as well. After an in-camera hearing on the motions, the trial court ordered the disclosure of evidence related to the services technician but ruled that there was "nothing to disclose as it pertains to the Defense motion" regarding the two officers.

Standley now asks us to conduct an independent review of the sealed record of the in-camera *Pitchess* proceedings, and the People make no objection. We routinely grant such requests " 'to determine whether the trial court abused its discretion in denying a defendant's motion for disclosure of police personnel records.' " (*People v. Myles* (2012) 53 Cal.4th 1181, 1209, quoting *People v. Prince* (2007) 40 Cal.4th 1179, 1285.) Here, "[w]e have reviewed the record under seal and independently conclude that the trial court did not abuse its discretion in its ruling upon the *Pitchess* motion." (*Prince*, at p. 1286.)

### 3. Standley Is Entitled to a New Sentencing Hearing

After Standley received a sentence indexed to the statutory three-year middle term for robbery, section 1170, subdivision (b), was amended to read as follows: "(6) Notwithstanding paragraph (1), and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence . . . ."

In his opening brief, Standley argues that this amendment applies retroactively to his case under *In re Estrada* (1965) 63 Cal.2d 740, 744–745, and that the record does not " 'clearly indicate' " that remanding the matter for resentencing would be an idle act. (*People v. Flores* (2020) 9 Cal.5th 371, 431–432.) The People concede these points, and we accept the concession.

## DISPOSITION

We affirm the conviction and remand the matter to the trial court for a new sentencing hearing informed by the current text of section 1170, subdivision (b).

HIRAMOTO, J.*

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.

*People v. Standley* (A162844)

---

* Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.