Filed 1/17/24  P. v. Alvarez CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSE GUADALUPE ALVAREZ,<br><br>    Defendant and Appellant. | B323755<br><br>(Los Angeles County<br>Super. Ct. No. BA494191) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James R. Dabney, Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri, Supervising Deputy Attorney General, and Roberta L. Davis, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

While seated in the front passenger seat of a car at a gas station, Jose Guadalupe Alvarez pointed a gun at a stranger. That stranger, Andres Septium Diaz, identified Alvarez at a field show-up a few hours later. Alvarez ultimately was convicted of assault with a firearm and possession of a firearm by a felon.

Alvarez appeals, arguing the trial court violated his due process rights by admitting evidence of Septium's identification. Before the show-up, an officer told Septium that the police were pursuing the car Septium had seen at the gas station, which Alvarez contends was an unduly suggestive comment. We conclude that, while the officer's comment was somewhat suggestive, there was no due process violation because Septium's identification of Alvarez was reliable under the totality of the circumstances. Therefore, we affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

### A. *Alvarez Points a Gun at Septium*

One night in 2021, Septium was driving alone in his car. As Septium pulled into a gas station, a silver Lexus sedan blocked him, and the driver honked at him. The front passenger of the Lexus pointed a gun at Septium from behind the door's open window. Septium raised his hands and bent his head down, then backed his car out of the station and drove away.

B.  *Septium Immediately Reports the Assault, and the Police Tell Septium They Are Pursuing the Lexus*

Approximately 20 minutes later, Septium flagged down Officer Eddie Martinez of the Los Angeles Police Department to report the assault.  Around the same time, Officer Michael Quezada saw a silver Lexus sedan that was reported stolen, which happened to be the same Lexus involved in the assault.  When Officer Quezada attempted to conduct a traffic stop, the Lexus sped away.  Officer Quezada pursued in his patrol car.

While Officer Quezada was pursuing the Lexus, Officer Martinez took Septium to a nearby police station to make a statement.  Septium and Martinez had the following discussion:

"Officer Martinez:  Right now they're in, how do you say? *Pursuit*.[1]

"Septium:  Oh, okay.

"Officer Martinez:  They have it.

"Septium:  Oh, really?  The Lexus?

"Officer Martinez:  Yeah, a Lexus.  It has to be them. . . . The car's stolen."

Septium described the incident to Officer Martinez.  Septium said the front passenger who pointed the gun at him was skinny, 24 or 25 years old, and Hispanic, with "no hair."  Septium did not get a good view of the driver or see whether the driver had hair, but he thought the driver was a man.  Septium said he saw another man in the backseat, who Septium also

---

1  Most of the conversations between Septium and the officers were in Spanish.  Officer Martinez, however, used the English word "pursuit."

3

thought had no hair.  Septium was unsure whether there were any other people in the back seat.

### C.  *The Police Pursue and Detain Alvarez*

Meanwhile, Officer Quezada was pursuing the Lexus.  As the Lexus traveled 90 miles an hour on a freeway, someone in the car threw a gun out a passenger-side window.  Eventually the Lexus got off the freeway and slowed down in a residential neighborhood.  Two men got out of the car and started running— one from the front passenger-side door and one from the rear driver-side door.  The front passenger was wearing a black T-shirt, light pants, and white shoes. The other one was also wearing a black T-shirt, but with dark pants and dark shoes.  Officer Quezada continued to follow the Lexus, which came to a complete stop about a minute later.  At that point, there were only two people left in the car—both women.

An hour later, law enforcement officers found Alvarez hiding behind some bushes in the backyard of a house near where the Lexus had stopped.  Alvarez was wearing a dark T-shirt, light pants, and white shoes (like the person who was in the front passenger seat of the Lexus).  Officers detained Alvarez, as well as the other man they believed had been in the Lexus.

### D.  *Septium Identifies Alvarez as the Assailant*

Back at the police station, Officer Martinez told Septium, "They're coming in a bit with the suspects and they're gonna talk to you."  Eventually Officer Quezada arrived, introduced himself to Septium, and gave the following admonition:  "I'm going to take you to a place . . . to see if  you can identify the person who was involved.  Okay?  So, okay the person we have right now is

. . . temporarily in custody and is a—is a possible suspect. Okay? Just because the person is in police custody does not indicate that he is guilty of what happened. Okay? So just because . . . we now have him detained doesn't mean that it's the person who did it. Okay?" Septium replied: "Yes, that's fine." Officer Quezada continued: "The reason for—for what we are going to do . . . the [identification], is so you can see if the person—if we can eliminate the person or [identify] the person we have detained was the person who committed the crime against you." Septium replied: "Oh, okay."

After the admonition, Officer Quezada drove Septium to a nearby parking lot. Officer Quezada told Septium: "We have four people. You tell me if anyone of [them] committed the crime or if anyone was inside the vehicle that you recognize."

Each of the suspects was seated in the back of a different patrol car. The first patrol car arrived in the parking lot with a man who was not Alvarez. When Septium saw the man, Septium said, "Not that one." When asked to confirm his statement, Septium said: "I think so. . . . It's just that it was, when I saw them, it was like dark." The first patrol car drove away.

The next patrol car arrived with Alvarez seated in the back. While Septium was looking at Alvarez, he and Officer Quezada had the following exchange:

"Officer Quezada: Is it that guy?

"Septium: Can I see the first person again?

"Officer Quezada: The other one was taken away already. . . . These are gonna be women."

"Septium: They all look the same. He looked like this guy, the skinny guy.

"Officer Quezada: Okay. So you think it is him?

5

"Septium: Yeah."

The final two patrol cars arrived with the two women, neither of whom Septium recognized. After Septium saw all four suspects, Officer Quezada asked whether Septium had any questions. Septium said, "Well, the truth is they both looked the same," but he added that "the second one" looked more like the assailant. Later on, Septium reiterated "it was dark" and "they look a little bit alike." Officer Quezada asked: "But the guy you had said first . . . 'Oh yes, that's him'—that's the one who looked like the person?" Septium again said "the second one" looked more like the assailant.

> E.       *The People Charge Alvarez with Several Crimes*

The People charged Alvarez with one count of assault with a semiautomatic firearm (Pen. Code, § 245; count 1)[2] and one count of possession of a firearm by a felon (§ 29800, subd. (a)(1); count 3).[3] For count 1, the People alleged Alvarez personally used a firearm in committing the offense, within the meaning of section 12022.5, subdivision (a). For both counts, the People alleged Alvarez had previously been convicted of two serious or violent felonies within the meaning of the three strikes law. (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).)

---

[2]      Statutory references are to the Penal Code.

[3]      There was no count 2.

F.    *The Trial Court Denies Alvarez's Motion To Exclude Septium's Identification*

Prior to trial, Alvarez filed a motion to exclude Septium's identification of Alvarez at the field show-up, as well as any in-court identifications Septium might make at trial.[4]  Alvarez argued the identification procedure was unduly suggestive because Officer Martinez told Septium prior to the show-up that law enforcement officers had the people in the Lexus.

The trial court denied the motion.  The court concluded that, "on balance, the officers' conduct was not suggesting it was Mr. Alvarez" because Officer Quezada admonished Alvarez that the suspects "may or may not be the people involved in the incident" and because the officer did not "pressure [Alvarez] into making the identification."  The court ruled that Officer Martinez's statement before the show-up, that the police had the suspects in the Lexus, was not enough, "on balance, to vitiate everything that transpired after."   Finally, the court stated Septium's limited opportunity to view his assailant went to the weight of his testimony, but was not sufficient to show the identification procedure was improper.

G.    *The People and Alvarez Present Evidence at Trial*

Septium, Officer Martinez, and Officer Quezada testified at trial for the People.  Septium identified Alvarez in court as the person who pointed the gun at him.  During cross-examination, counsel for Alvarez questioned Septium extensively about his identification of Alvarez on the night of the assault.

---

[4]    At the preliminary hearing, Septium identified Alvarez in court as the person who pointed the gun at him.

The People played for the jury security footage from the gas station showing the interaction between Septium and the people in the Lexus. The identities of the people in the Lexus were not clear from the security footage; however, the license plate of the Lexus matched the license plate of the Lexus that Officer Quezada later pursued. The People played footage from the dashboard camera of Officer Quezada's patrol car showing the two men getting out of the Lexus (and the different clothing each was wearing). Both the People and Alvarez also played for the jury footage from body cameras worn by Officers Martinez and Quezada showing their interactions with Septium, including during the show-up.

Officer Brian Marukami of the Los Angeles Police Department testified he searched the area where someone threw a gun out a window of the Lexus during the pursuit. Officer Marukami found a black gun on the freeway with one round loaded in the chamber.

A forensic print specialist and a fingerprint expert also testified for the People. Both compared fingerprints lifted from the inside of the front passenger window of the Lexus to Alvarez's fingerprints. Both determined Alvarez's fingerprints matched the fingerprints on the window.

Mitchell Eisen, an expert on "eyewitness memory and suggestibility," testified for Alvarez. Eisen stated that "we use inference" to fill gaps in our memories and that "sometimes this reconstructive process leads to filling in of new information that may or may not be accurate." Eisen also said that, during traumatic events, people have less ability to accurately remember details about the event.

When discussing eyewitness identifications, Eisen stated the longer someone is "exposed to view [a] person . . . the better shot" he or she will "have later on of being able to identify and pick them out."  Eisen also stated a person is much more likely to make a false identification during a field show-up—where he or she is shown "a single individual for identification purposes"—than when shown a suspect in a group.  According to Eisen, because show-ups are inherently suggestive, it is the best practice for California peace officers (1) to use show-ups only when there are time constraints and (2) not to use the term "suspect" when conducting a show-up, because using the term makes the procedure more suggestive.

H.    *A Jury Convicts Alvarez, and the Trial Court Sentences Him*

The jury convicted Alvarez on both counts and found true the allegation under section 12022.5, subdivision (a), he personally used a firearm in the commission of an assault with a semiautomatic firearm.  Alvarez admitted he had two prior serious or violent felony convictions under the three strikes law.

At sentencing, the court reduced the conviction on count 1 from assault with a semiautomatic firearm to assault with a firearm (§ 245, subd. (a)(2))[5] and dismissed one of the prior serious or violent felony convictions.  On count 1 the court sentenced Alvarez to a term of nine years (the middle term of

---

[5]    The court ruled there was insufficient evidence the gun Alvarez pointed at Septium was a semiautomatic firearm because—although the gun had a magazine—no one testified how the gun worked.

9

three years, doubled under the three strikes law, plus three years for the enhancement under section 12022.5, subdivision (a)). On count 3 the court imposed but stayed under section 654 execution of the upper term of six years. Alvarez appealed from the judgment.

## DISCUSSION

### A. *Applicable Law and Standard of Review*

"To determine whether the admission of identification evidence violates due process, 'we consider (1) whether the identification procedure was unduly suggestive and unnecessary, and, if so, (2) whether the identification itself was nevertheless reliable under the totality of the circumstances . . . .'" (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 768 (*Holmes*); accord, *People v. Sanchez* (2019) 7 Cal.5th 14, 35 (*Sanchez*); *People v. Clark* (2016) 63 Cal.4th 522, 556 (*Clark*); see *Sexton v. Beaudreaux* (2018*)* 585 U.S. ___ [138 S.Ct. 2555, 2559] ["'due process concerns arise only when law enforcement officers use[ ] an identification procedure that is *both* suggestive and unnecessary'"].) The defendant has the burden to show the identification procedure was both unduly suggestive and unreliable under the circumstances. (*People v. Cunningham* (2001) 25 Cal.4th 926, 989; *People v. Ochoa* (1998) 19 Cal.4th 353, 412.)

"A defendant's claim that an identification procedure was unduly suggestive is a 'mixed question of law and fact.'" (*People v. Wilson* (2021) 11 Cal.5th 259, 283; see *Clark*, *supra*, 63 Cal.4th at p. 557.) "'"We review deferentially the trial court's findings of historical fact, especially those that turn on credibility

determinations, but we independently review the trial court's ruling regarding whether, under those facts, a pretrial identification procedure was unduly suggestive.""" (*People v. Thomas* (2012) 54 Cal.4th 908, 930-931; accord, *Holmes*, *supra*, 12 Cal.5th at p. 768; see *Wilson*, at p. 283; *Clark*, at pp. 556-557.)

B.      *Even if the Identification Procedure Was Suggestive, Septium's Identification of Alvarez Was Reliable Under the Circumstances*

Alvarez contends the field show-up procedure was unduly suggestive and unnecessary because, prior to the show-up, Officer Martinez told Septium that police officers were in pursuit of a Lexus and "it has to be them." All single-person show-ups are "'inherently suggestive, at least to some extent.'" (*Sanchez*, *supra*, 7 Cal.5th at p. 36.) Nevertheless, the Supreme Court has held "such showups are not necessarily unfair. [Citation.] 'Rather, all the circumstances must be considered.'" (*Ibid.*; see *People v. Medina* (1995) 11 Cal.4th 694, 753 (plur. opn. of Lucas, C. J.); *People v. Clark* (1992) 3 Cal.4th 41, 136.) "A violation occurs '"only if the identification procedure is 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'"'" (*People v. Wilson*, *supra*, 11 Cal.5th at p. 283; see *Holmes*, *supra*, 12 Cal.5th at p. 768; *Sanchez,* at p. 35.)[6]

---

[6]      Alvarez does not challenge the officers' use of a field show-up, rather than a lineup, as unnecessary under the circumstances.

11

It would have been better practice for Officer Martinez not to have told Septium that officers were pursuing a Lexus, that it "has to be them," or that they "were coming in with the suspects." But even if Officer Martinez's comments rendered the show-up suggestive, there was no due process violation because Septium's identification of Alvarez was nevertheless reliable under the totality of the circumstances. (See *Sanchez*, *supra*, 7 Cal.5th at pp. 36-37 [even where "the suggestive nature of the identification does raise concerns," the identification may still be "reliable under the totality of the circumstances" where the "the inherent suggestiveness of the procedure was outweighed by other factors confirming the reliability of the identification"]; *People v. Arias* (1996) 13 Cal.4th 92, 168 ["When an eyewitness has been subjected to undue suggestion, the factfinder must nonetheless be allowed to hear and evaluate his identification testimony unless the totality of the circumstances suggests a very substantial likelihood of irreparable misidentification." (internal quotation marks omitted)].)

"In assessing the totality of the circumstances, we consider "'such factors as the opportunity of the witness to view the suspect at the time of the offense, the witness's degree of attention at the time of the offense, the accuracy of his or her prior description of the suspect, the level of certainty demonstrated at the time of the identification, and the lapse of time between the offense and the identification." [Citations.] "Against these factors is to be weighed the corrupting effect of the suggestive identification itself.""" (*People v. Wilson*, *supra*, 11 Cal.5th at p. 283; see *Sexton v. Beaudreaux*, *supra*, 585 U.S. at p. ___ [138 S.Ct at p. 2559]; *Holmes*, *supra*, 12 Cal.5th at p. 768; *Sanchez*, *supra*, 7 Cal.5th at pp. 35-36.)

12

As an initial matter, to the extent Officer Martinez's comments about the Lexus were suggestive, their corrupting effect was reduced by Officer Quezada's subsequent admonition immediately before the show-up that, just because a person was in police custody, did not mean the person was involved in the crime. Courts have consistently held such admonitions reduce the suggestibility of an identification procedure. (See *People v. Garcia* (2016) 244 Cal.App.4th 1349, 1360-1361 [no due process violation, despite that police told the victim "'they had caught the guys,'" where police admonished the victim that he was not to infer guilt from the fact that the individuals were detained and that he did not have to identify anyone]; *People v. Rodriguez* (1987) 196 Cal.App.3d 1041, 1050 [no due process violation where the "witnesses were shown the four suspects after being admonished that the shooter might or might not be among them"]; see also *People v. Cunningham*, *supra*, 25 Cal.4th at p. 990 [no "'substantial likelihood of irreparable misidentification'" during photographic lineup where the witness "'was instructed that he was not to assume the person who committed the crime was pictured therein, that it was equally important to exonerate the innocent, and that he had no obligation to identify anyone'"].) Septium confirmed he understood the admonition.

Moreover, substantial evidence supported the trial court's finding that no one pressured Septium into identifying Alvarez or any of the other suspects officers showed him. (See *People v. Nguyen* (1994) 23 Cal.App.4th at 32, 39 [trial court's finding law enforcement officers did not encourage the witness to identify the suspect "will be upheld if supported by substantial evidence"].) When Septium viewed the first suspect, he said, "Not this one";

Officer Quezada said only, "Okay," and he told the other officers "it's gonna be a negative on this guy." When Septium said he did not recognize either of the two women, Officer Quezada said, "Okay negative, . . . he doesn't recognize them." When Septium viewed Alvarez, Officer Quezada asked only whether Alvarez was the "guy." Septium asked whether he could see the first male suspect again, and Officer Quezada responded he had already been taken away. Only after Septium then said his attacker "looked like this skinny one" did Officer Quezada ask Septium to clarify whether he thought Alvarez was the assailant. While Officer Martinez's earlier comments about the Lexus may have suggested that one of the four suspects was probably Septium's assailant, no one persuaded Septium to identify Alvarez or anyone else specifically. (See *People v. Chavez* (2018) 22 Cal.App.5th 663, 676 [no due process violation where detective "did not expressly or implicitly attempt to persuade [the witness] to identify [defendant] as his assailant"]; *Nguyen*, at p. 39 [no due process violation where the police "'did not impermissibly suggest in any way that [the witness] had to make an identification of the suspects'"].)[7]

Similarly, Officer Martinez's comments—to the extent they were suggestive—implicated all four of the suspects, not just Alvarez. The fact that Septium identified Alvarez but not the other man indicated he was not heavily influenced by the earlier comments. (See *In re Carlos M.* (1990) 220 Cal.App.3d 372, 386 [victim was not influenced by a single-person show-up procedure where she "positively identified one suspect *but made no*

---

[7]	Indeed, Alvarez does not argue the show-up impermissibly suggested he was the more likely culprit than the other suspect.

14

*identification of his companion*"]; see also *People v. Garcia, supra,* 244 Cal.App.4th at p. 1360 [witness "acted independently of any suggestion or pressure that may have been expressed" prior to the lineup where he was "unable to identify any of the defendants as suspects but did recognize . . . the getaway car"].)

Other factors confirmed the reliability of Septium's identification of Alvarez. For one, Septium had a good opportunity to view Alvarez. While Septium only saw Alvarez for a moment during the assault and admitted to Officer Quezada it was dark, Septium testified Alvarez was only a few feet away from him. In addition, Septium's pre-identification description of his assailant as 24 or 25 years old, skinny, Hispanic, and with no hair—while somewhat general—matched Alvarez's appearance during the show-up.[8] Moreover, the lapse of time between the assault and the identification was short; Septium identified Alvarez at the show-up an hour and a half after the assault. (See *Sanchez, supra,* 7 Cal.5th at p. 37 [identification was reliable where the "showup occurred mere hours" after crime]; *People v. Hall* (1979) 95 Cal.App.3d 299, 310 [identification was reliable where "the length of time between the crime and the confrontation was approximately one hour"].)

More importantly, there was considerable evidence confirming Alvarez was the person who pointed the gun at Septium. Courts have regularly found identifications reliable where other evidence corroborates the accuracy of the witness's

---

[8]     Alvarez was 26 years old the night of the assault. Septium testified he recognized Alvarez as his assailant during the show-up because Alvarez was slim and because he had the same hairline, forehead, and eyes.

15

identification.  (See *Holmes, supra*, 12 Cal.5th at p. 769 [it was "not substantially likely that [the witness] misidentified [the defendant], particularly in light of all the additional evidence"]; *Sanchez, supra*, 7 Cal.5th at p. 37 [five-year-old witness's identification during a single-photograph show-up was reliable, where "[p]art of the identification was independently corroborated by none other than defendant," and "the physical evidence corroborated part of what [the witness] told the police"].)

There was no serious dispute Alvarez was in the front-passenger seat of the Lexus during Officer Quezada's pursuit. Alvarez's fingerprints were on the inside of the front-passenger window, Officer Quezada saw a person who looked like Alvarez (and was wearing the same clothing) get out from the front-passenger door (an incident captured by Quezada's body camera), and police found Alvarez hiding in a backyard a short distance from where the pursuit ended.  (See *People v. Nguyen, supra*, 23 Cal.App.4th at p. 40 [identification was reliable where fingerprint evidence placed the defendant at the crime scene].) The only other man in the Lexus was wearing different clothing, further confirming Alvarez was the person in the front-passenger's seat.  (See *People v. Chavez, supra*, 22 Cal.App.5th at p. 676 [identification was reliable where the victim described to detectives the clothing his assailant was wearing, and the defendant was the only person in the surveillance camera footage of the attack wearing matching clothing].)  Although it is theoretically possible, as Alvarez asserts, the occupants of the Lexus changed seats after the assault on Septium, there was no evidence supporting such speculation.  And there was evidence to the contrary.  Only a short period of time elapsed between the assault and the beginning of Officer Quezada's pursuit, and no

one saw anyone change seats during the pursuit (though Officer Quezada did see someone throw a gun out the window on the passenger side).

It is true Septium was not 100 percent certain of his identification of Alvarez at the field show-up, admitting both male suspects looked alike. Septium's lack of certainty, however, did not render the identification unreliable. *People v. Wilson*, *supra*, 11 Cal.5th 259 is instructive. In that case the witness briefly saw the defendant in court at a hearing. (*Id.* at p. 286.) A month later, the witness participated in a live lineup where he could not positively identify the defendant, but stated that, among the lineup participants, the defendant "most closely resembled" the person he saw commit the crime. (*Ibid.*) The Supreme Court held the witness's "failure to definitively identify" the defendant at the lineup did not undermine the reliability of the identification. (*Id.* at p. 287.) In particular, the Supreme Court explained that, to the extent the identification was "useful to any degree," it was because it "bolstered the more definitive identifications" of the defendant by other witnesses. (*Ibid.*) Similarly, Septium may not have been certain during the field show-up Alvarez was the person who assaulted him, but Septium consistently stated Alvarez looked more like the person who assaulted him than the other male suspect. Like the witness's less-than-certain identification in *Wilson*, Septium's identification was useful at trial to bolster the other incriminating evidence—namely, the evidence placing Alvarez in the front-passenger seat of the Lexus at the time of the assault.

Finally, at trial Alvarez had ample opportunity to (and did) question Septium about the identification and Officers Martinez and Quezada about their interactions with Septium. The

17

opportunity to question all relevant witnesses significantly reduced the possibility of any "'irreparable misidentification.'" (*Manson v. Brathwaite* (1977) 432 U.S. 98, 116; see *Holmes*, *supra*, 12 Cal.5th at p. 770 [identification was reliable where "[t]he defense was able to thoroughly cross-examine [the witness] and delve into factors bearing on the reliability of his identifications"]; *People v. Alexander* (2010) 49 Cal.4th 846, 903 [no due process violation where the "circumstances of the identification were disclosed to the defense, they were the subject of thorough cross-examination, and the jury was able to evaluate the reliability of [the witness's] identification"]; *People v. Cooks* (1983) 141 Cal.App.3d 224, 271 [identifications were reliable where "each witness who identified one of the defendants in court was cross-examined at length about his or her pretrial identification"].)  Under the circumstances, the identification was sufficiently reliable that its introduction at trial did not violate Alvarez's due process rights.  It was up to the jury to consider how the procedure might have influenced Septium's identification of Alvarez and weigh that with the other evidence.  (See *Manson*, at p. 116 ["Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature."]; *People v. Alexander*, *supra*, 49 Cal.4th at p. 903 [same]; *People v. Gonzalez* (2006) 38 Cal.4th 932, 944 ["[w]hether the witnesses were truthful when they identified defendant . . . presented credibility questions for the jury to resolve," and "presenting the evidence to the jury for its resolution did not violate defendant's rights"].)

## DISPOSITION

The judgment is affirmed.


SEGAL, Acting P. J.

We concur:



FEUER, J.



MARTINEZ, J.